FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 09, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRANDON D.,[1] | No.  4:24-CV-05124-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS** |
| LELAND DUDEK, Acting Commissioner of Social Security,[2] | |
| Defendant. | |

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Leland Dudek became the Acting Commissioner of Social Security pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), he is hereby substituted as the defendant.

Due to lumbar radiculopathy, gastroesophageal reflex disease (GERD), irritable bowel syndrome (IBS), peripheral nerve pain, delayed gastric emptying (gastroparesis), and legal blindness in the left eye, Plaintiff Brandon D. claims that he is unable to work fulltime and applied for disability insurance benefits and supplemental security income benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly assessed Plaintiff's credibility, and that the ALJ's formulated RFC is incomplete and unsupported by substantial evidence. As is explained below, the ALJ erred. This matter is remanded for an award of benefits.

## I.     Background

In October 2012, Plaintiff filed applications for benefits under Title 2 and Title 16, claiming disability beginning September 1, 2015, based on the physical impairments noted above.[3] The agency denied Plaintiff's claim at the initial and reconsideration levels.[4]

---

[3] AR 194-195, 196-209, 223.

[4] AR 97, 101, 113, 118.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

After the agency denied Plaintiff benefits, ALJ Marie Palachuk held a telephone hearing in October 2023 at which Plaintiff appeared with his representative.[5] Plaintiff and a vocational expert testified.[6]

After the hearing, the ALJ issued a decision denying benefits.[7] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[8] As to medical opinions the ALJ found:

- The opinions of state agency evaluator Leah Holly, DO, to be persuasive.

- The opinions of state agency evaluator Ian Cowan, MD, to be not persuasive.

- The opinions of consultative examiner Serenity Kelton, PA-C, to be not persuasive.

---

[5] AR 37-54.

[6] *Id.*

[7] AR 14-36.  Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)-(g) a five-step evaluation determines whether a claimant is disabled.

[8] AR 24-27.

- The opinions of examining source Christopher Johnson, OD, were very persuasive.

- The opinions of state agency consultant Eugene Kester, MD, to be persuasive.

- The opinions of consultative examiner Linda Wolcott, PhD, to be persuasive.[9]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff meets the insured status requirements of the Act through September 30, 2015.

- Step one: Plaintiff has not engaged in substantial gainful activity since September 1, 2015.

- Step two: Plaintiff had the following medically determinable severe impairment: lumbar radiculopathy; GERD; and irritable bowel syndrome.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled

---

[9] AR 27-29.

the severity of one of the listed impairments and specifically considered Listings 1.15 and 5.06

- RFC:  Plaintiff had the RFC to perform a full range of work at the light exertional level.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as an office cleaner (DOT 323.687-014), laundry aid (DOT 302.685-010), and parking lot attendant (DOT 915.473-010).[10]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[11]

---

[10] AR 19-30.

[11] AR 188.

## II. Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[12] and such error impacted the nondisability determination.[13] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]

---

[12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[13] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. §§ 404.1520(a), 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that

# III.   Analysis

Plaintiff seeks relief from the denial of disability because the ALJ erred when evaluating Plaintiff's subjective complaints, and thereby erred in formulating the RFC.  The Commissioner argues there was no error because the ALJ properly evaluated Plaintiff's subjective complaints and considered that Plaintiff's condition was not consistent with the objective medical evidence.  The Court disagrees with the Commissioner. As is explained below, the ALJ's analysis contains consequential error.

## A.   Symptom Reports: Plaintiff establishes consequential error.

Plaintiff argues the ALJ failed to provide valid reasons for discounting his symptom reports and failed to account for the time that he would be absent from work due to his severe abdominal pain,

---

detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

nausea, and vomiting. He further argues that the ALJ erred by limiting her reasoning to discount Plaintiff's symptom reports with only an analysis of the objective medical evidence.

    1.   <u>Standard</u>

    The ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[15] This

_____

[15] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Factors to be considered by the ALJ when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; 6) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the claimant's functional limitations and

1
2

requires the ALJ to "show his [or her] work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[16]

3
4
5
6
7
8
9
10
11
12
13

When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[17] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[18] General findings are insufficient; rather, the ALJ must identify what symptom claims are

14
15
16
17
18
19

restrictions due to pain or other symptoms. Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

20

[16] *Smartt v. Kijakazi*, 53 F.4th at 499  (alteration added).

21

[17] *Molina*, 674 F.3d at 1112.

22
23

[18] *Ghanim* 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036).

being discounted and what evidence undermines these claims.[19] "The clear and convincing standard is the most demanding required in Social Security cases."[20] Therefore, if an ALJ does not articulate specific, clear, and convincing reasons to reject a claimant's symptoms, the corresponding limitations must be included in the RFC.[21]

2.   Relevant Testimony

a.   *Plaintiff's hearing testimony*

---

[19] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[20] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[21] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC.").

Plaintiff testified, and a vocational expert testified.[22] Plaintiff testified that he was 29 years old and had completed an associate's degree.[23] He said that he is not working and last worked at a theatre from October 2019 through March 2020 when it closed due to Covid.[24] He said he worked different jobs at the theatre and the last one was as a ticket taker.[25] He said he was in school and worked part-time from five to thirty hours a week.[26] He said that he also had a seasonal job when he was 15 at a haunted house.[27]

Plaintiff said he filed for disability since September 2015 because he had a "crippling life changing ailment" at the time.[28] Plaintiff said he went into the hospital to have his appendix removed and was

---

[22] *Id.*

[23] AR 41.

[24] AR 41-42.

[25] AR 42.

[26] *Id.*

[27] *Id.*

[28] AR 43.

discharged after three days but knew after two weeks that "there was something wrong."[29] Plaintiff said he has lower abdominal pain in his digestive system and genitals and has nausea, acid reflux, and vomiting.[30] Plaintiff said he is taking omeprazole and ondansetron for nausea, and had injections and nerve blocks for pain, and takes "nerve medications."[31] He said that he continues to have constant pain but that it fluctuates in severity and gets worse if he walks, bends, or is at a 90 degree angle.[32] He said that at its worst the pain is 10/10 and he cannot even walk and will lie down on the floor.[33] He said that he is sedentary so he does not have that level of pain often but that he constantly deals with vomiting and constipation.[34]

---

[29] *Id.*

[30] AR 43-44.

[31] AR

[32] AR 44-45.

[33] AR 45.

[34] *Id.*

Plaintiff testified that he takes medication and follows a specific diet to deal with his vomiting and constipation, but it does not help much.[35] He said that his energy level is a little less than a healthy person and that he has gained a little weight because he is sedentary.[36] He said that he had to use the bathroom a little bit more than usual as well.[37] He said that he can sit for three to four hours and that on a good day he can stand for over an hour.[38] He said he would not be able to lift a gallon of milk and that he spends his day mostly lying down and sitting for three to five hours.[39] He said that he will get up in the morning if he is not having a bad day and cook eggs but otherwise will only use the microwave.[40] He has a driver's license and can drive to the gas station that is two minutes away but that he often cannot leave the

---

[35] AR 45-46.

[36] AR 46.

[37] *Id.*

[38] AR 46-47.

[39] AR 47.

[40] AR 47-48.

house.[41] He said about four out of five times he will plan to leave home he cannot due to symptoms.[42] He said that if was given a job sitting at a bench watching a monitor with the option to sit or stand he would likely not be able to show up every day because of his symptoms.[43]

### b. *Plaintiff's written testimony*

On February 12, 2022, Plaintiff completed an Adult Function Report.[44] Plaintiff wrote that he lived alone in his car or stayed with friends.[45] He said that he cannot stand long or walk far without getting shooting pains in his rectum and penis and that he has constant nausea.[46] He said that spends the day lying in a seat reclined and gets up to use the bathroom or eat, and that he is very uncomfortable due to

---

[41] AR 48.

[42] *Id.*

[43] AR 48-49.

[44] AR 235-242.

[45] AR 235.

[46] *Id.*

nausea or stomach pain.[47] He said that he sleeps a lot to mitigate pain and would at times sleep through his medication times.[48] He said that he does not cook or do chores because it is painful to stand and he has no permanent home.[49] He washes his clothes once every two weeks.[50]

Plaintiff wrote that he goes outside once a week and that he does drive a car and goes once or twice a day to a fast-food drive-thru.[51] He said he can pay bills and count change.[52] Plaintiff said he listens to music and watches movies but is unable to fish, travel, or go to concerts anymore.[53] Plaintiff said he is very solitary now and only spends time with others by phone or text message.[54] Plaintiff said he is unable to go

---

[47] AR 236.

[48] AR 237.

[49] *Id.*

[50] *Id.*

[51] AR 238.

[52] *Id.*

[53] AR 239.

[54] *Id.*

anywhere and that his friends "have slowly moved on with their lives."[55]

Plaintiff reported that his conditions affect his ability to lift, squat, bend, stand , reach, walk, sit, kneel, climb stairs, concentrate, use his hands, and get along with others.[56] Plaintiff said that any movement hurts—such as standing more than 10 minutes, walking more than 50-100 feet, bending, or kneeling—and that at times the pain affects his concentration.[57] He said that after walking 100 feet he needs to lie down for 10-15 minutes.[58] Plaintiff said that when not in pain he can finish what he starts, can follow instructions, can get along with others, and was never fired from a job because of problems getting along with others.[59]

---

[55] *Id.*

[56] AR 240.

[57] *Id.*

[58] *Id.*

[59] *Id.*

Plaintiff said that he does not handle stress or changes in routine well.[60] He said he is worried he will never recover.[61] Plaintiff said he uses a cane when he walks and a folding chair in the shower, and has worn glasses since childhood.[62] Plaintiff wrote that his condition has kept him from living a normal life and that he has "been going through this nightmare for almost seven years now."[63] He said he has been unable to work or have a social life, and has no money or way to support himself.[64] Plaintiff said he has seen countless doctors and none had been able to help with his 24 hour pain.[65]

---

[60] AR 241.

[61] *Id.*

[62] *Id.*

[63] AR 242.

[64] *Id.*

[65] *Id.*

        *c.*   *Vocational expert testimony*

Vocational expert Diane Kramer appeared and testified at the ALJ hearing.[66] She testified that a person of Plaintiff's age, education, and work experience if limited to work at the light exertional level would be able to work as an office cleaner, laundry aide, and parking lot attendant.[67] She testified that based on her work experience a person who would be off task for 20% of the workday would not be able to maintain employment.[68] She testified that the average allowance for a person to be absent is five to eight days per year and that an individual who was absent for two days a month would not be able to maintain employment.[69] She also testified that an individual who was expected to need to rest for at least one hour per day in addition to normal breaks would not be able to maintain employment.[70]

---

[66] AR 37-54.

[67] AR 50-51.

[68] AR 51-52.

[69] AR 52.

[70] AR 53.

3.    <u>The ALJ's Findings</u>

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his "medically determinable impairments" inconsistent with the objective medical evidence and other evidence of record.[71] The ALJ articulated her reasoning as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with the objective medical evidence. In evaluating the claimant's subjective complaints, the undersigned credits those complaints that diminish his capacity for basic work activities only to the extent they are reasonably consistent with the objective medical evidence and other evidence of record. While it is clear that the claimant's symptoms cause some limitations, the record does not establish that they are so debilitating as to preclude all gainful employment.
>
> The claimant alleged having nausea, abdominal pain and spasms and indicated that he could only remain upright for three to four hours and stand and/or walk for one hour on a good day. There is evidence of GERD, IBS, and lumbar radiculopathy with minimal multilevel diffused disc bulges and evidence of abdominal pain or tenderness, abdominal guarding, and decreased range of motion of the lumbar spine, and bilateral hips (Ex. 1F/38-39, 4F/8, 4F/10, 4F/36-37, 11F/4-10, 16F/5, and 18F/29). Considering these findings, the claimant was limited to light exertion. The claimant alleged severe nausea and abdominal pain. There was evidence of

---

[71] AR 24.

delayed gastric emptying (Ex. 16F/10). However, his abdominal image studies were primarily unremarkable (Ex. 1F/1-2, 1F/54, 1F/72, 3F/1-2, and 4F/10-11). The claimant alleged laying down most of the day and being sedentary. However, overall the record showed primarily normal gait and ambulation, normal strength, normal coordination, and normal sensation in his bilateral upper and lower extremities with no evidence of muscle atrophy (Ex. 1F/65-66, 3F/7, 3F/11, 3F/29-31, 3F/33, 4F/22, 11F, and 16F/5). These findings are consistent with at least light exertion.[72]

4.    Analysis

The ALJ's analysis is lacking in the consideration of factors that include Plaintiff's daily activities; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms. The ALJ has failed to even mention those factors in passing.  More importantly, the ALJ has ignored evidence that the treating and examining sources have indicated, either implicitly or explicitly, that they found Plaintiff's subjective claims credible.

_____

[72] AR 27.

Plaintiff's daily activities bear on his credibility if the level of activity is inconsistent with his claimed limitations.[73] An ALJ may rely on a plaintiff's daily activities to support an adverse credibility determination only when those activities either "contradict [the plaintiff's] other testimony," or "meet the threshold for transferable work skills"; *i.e.*, where he "is able to spend a substantial part of ... her day performing household chores or other activities that are transferable to a work setting."[74] Here, neither instance applies. Plaintiff's daily activities are consistent with his testimony.

The ALJ's analysis ignores the evidence both in Plaintiff's testimony set forth above and in the medical record as to the extremely limited nature of Plaintiff's daily activities. The ALJ glossed over Plaintiff's exhaustive efforts to find relief from his abdominal pain and never actually articulated her consideration of that factor.[75]

---

[73] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

[74] *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).

[75] AR 24-27.

Plaintiff's actions to seek relief from his pain began less than two weeks after his September 2015 appendectomy.  On October 2, 2015, Plaintiff presented to Mitch Hegerhorst, DO, in the emergency department with complaints of numbness, tingling, muscle twitches, and pain following an appendectomy on September 20, 2015.[76] On examination, Plaintiff was positive for rib pain, twitching in his right leg, and numbness and tingling in the extremities.[77] Additionally, patellar reflex was increased to 3+ on the right, showing a clear neurological issue.[78] Dr. Hegerhorst ordered an MRI of the brain and spine to rule out multiple sclerosis or spinal cord impingement but both were within normal limits.[79]

Plaintiff's complaints of pain in his abdomen and colorectal area persisted and on June 15, 2016, Plaintiff presented to Mark Flesher, MD, in the emergency department with complaints of persistent

---

[76] AR 755.

[77] AR 756.

[78] AR 757.

[79] AR 764-765.

abdominal pain following an appendectomy the prior September.[80]

Plaintiff complained of rectal pain and abdominal pain exacerbated by

bowel movements.[81] Dr. Flesher referred Plaintiff to a colorectal

surgeon and noted that he would prescribe mesalamine "in an attempt

to provide him with some measure of pain relief until he is able to see

the specialist."[82] Dr. Flesher's differential diagnosis was rectal spasm,

colitis, or perirectal mass.[83]  The notes make clear that Dr. Flesher did

not question the credibility of Plaintiff's complaints of pain.

Additionally, although the ALJ acknowledged evidence that

Plaintiff continued to report to his medical providers such intense

nerve pain in his groin and anus that he underwent a testicular study

and received nerve block injections in his ilioingual and perineal

nerves, the ALJ did not meaningfully consider these continued reports

---

[80] AR 751.

[81] Id.

[82] AR 753.

[83] Id.

when evaluating Plaintiff's subjective complaints.[84] The record also establishes that Plaintiff underwent MRIs of his brain and spine[85]; has sought treatment from at least 2 urologists, gastroenterologists, 2 neurologists, and a pain clinic[86]; underwent an endoscopy and colonoscopy[87]; and underwent a CT Scan of the abdomen.[88]  There is no indication that the providers who ordered those tests questioned the veracity of Plaintiff's claims and would not have ordered such complex and invasive treatment if they questioned the credibility of Plaintiff's reports of pain.

When Plaintiff was examined in August 2022 by consultative examiner Serenity Kelton, PA-C, at the Commissioner's request there was no indication that she questioned Plaintiff's credibility.  Plaintiff

---

[84] AR 25, 653.

[85] AR 502-504.

[86] AR 796

[87] AR 344-348.

[88] AR 361-363.

1
2
3
4
5
6
7
8
9

reported that he feels extreme nausea daily with vomiting.[89] PA-C Kelton noted that Plaintiff was cooperative throughout the examination.[90] She also noted that Plaintiff's allegations were IBS, peripheral nerve pain, and level blindness in the left eye.[91] PA-C Kelton diagnosed Plaintiff with possible IBS with nausea due to irritable bowel disease, gallbladder dysfunction, hepatic dysfunction, and possible GERD, all of which are consistent with Plaintiff's allegations.[92]

10
11
12
13
14

When examined by consultative examiner Linda Lindman, PhD, on September 21, 2022, Plaintiff reported that his mood was "nauseated" and again reported daily vomiting.[93] He reported that he had no mental health issues and said that he was unable to work due

15
16
17
18
19
20
21
22
23

---

[89] AR 653.

[90] AR 655.

[91] AR 660.

[92] AR 661.

[93] AR 666.

to his IBS symptoms.[94] Notably, Dr. Lindman opined that there was no evidence of malingering.[95]

Additionally, later records indicate that objective medical testing does support Plaintiff's subjective claims. As the ALJ noted, a gastric emptying study performed in September 2022 established that Plaintiff suffered from delayed gastric emptying, also known as gastroparesis.[96] On October 20, 2022, Plaintiff was examined by Dr. Flesher, who reported that a gastroenterologist, Dr. Tyler Christiansen, had recently diagnosed Plaintiff with gastroparesis syndrome.[97]

The ALJ failed to articulate adequate consideration of the results of the gastric emptying study other than to state that Plaintiff was advised to follow a gastroparesis diet and was prescribed a medication for atypical nausea. This was error on the ALJ's part because gastroparesis is a condition in which the muscles in the stomach are

---

[94] AR 668.

[95] AR 666.

[96] AR 26, citing AR 712.

[97] AR 779.

slowed and inhibit the digestive tract from processing food.[98] Because the condition is a symptom of an underlying disease, it cannot be cured without finding and treating the underlying cause and in advanced cases the condition requires surgical treatment.[99]

The primary symptoms of gastroparesis are vomiting, nausea, bloating, abdominal pain, and acid reflux.[100] The ALJ ignored the fact that objective testing performed in September 2022 yielded a diagnosis for a condition whose primary symptoms mimic those that Plaintiff has consistently complained of beginning at an office visit in February 2016.[101]

In short, there is nothing in the medical record that indicates that the medical providers questioned the veracity of Plaintiff's subjective

---

[98] *Gastroparesis - Diagnosis and treatment -* Mayo Clinic. (Last viewed April 3, 2025)

[99] *Id.*

[100] *Id.* See also, *Gastroparesis: Symptoms, Causes, Diagnosis & Treatment* – Cleveland Clinic. (Last viewed April 3, 2025.)

[101] AR 328.

claims even prior to the gastric emptying study.  It is also clear that based on the September 2022 gastric emptying study Plaintiff was ultimately diagnosed with a condition which would support his subjective complaints of abdominal pain.

Based on the record before it, the Court concludes that the ALJ erred in questioning the credibility of Plaintiff's subjective complaints because the medical providers' and consultative examiner's treatment notes establish that they did not suspect Plaintiff was malingering and found him credible.

Moreover, the ALJ's error is consequential for two reasons.  First, the opinions of the state agency examiners and PA-C Kelton as to Plaintiff's physical limitations were made prior to Plaintiff's October 2022 diagnosis with gastroparesis syndrome.  It is unclear what effect it might have had on their opinion if they were aware of Plaintiff's later diagnosis with gastroparesis syndrome.

Additionally, the VE testified that if Plaintiff were to be absent from work for two or more days per month, he would not be able to maintain employment.[102]

### 5.   Summary

Because the ALJ did not give evidentiarily supported reasons for discounting Plaintiff's symptom reports, a remand is warranted.  On remand, the ALJ is to develop the record as needed, and properly consider Plaintiff's subjective complaints and fully articulate her reasoning as to all the relevant factors including Plaintiff's limited daily activities; and the type and dosages of medication taken by Plaintiff as well as side effects of those medications; and the type and frequency of treatment sought by Plaintiff to treat his pain.

## B.   RFC:  Plaintiff established consequential error.

Plaintiff argues the ALJ failed to properly include all his limitations into the RFC and the hypothetical presented to the vocational expert. This argument depends on his contentions that the ALJ erred in evaluating his subjective complaints described above. As

---

[102] AR 52

explained above, Plaintiff met his burden in showing that the ALJ erred in analyzing his subjective complaints.

## C.    Remand for Further Proceedings

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[103] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[104]

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, additional limitations are to be added to the RFC. As noted above, on

---

[103] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[104] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at 595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

remand the ALJ is to properly consider Plaintiff's subjective complaints and fully articulate her reasoning as to all the relevant factors including Plaintiff's limited daily activities; the type and dosages of medication taken by Plaintiff as well as side effects of those medications; and the type and frequency of treatment sought by Plaintiff to treat his pain. **Additionally, the Court directs that Plaintiff's case be assigned to a different ALJ on remand**.

### IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 12 and 13**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

1    IT IS SO ORDERED. The Clerk's Office is directed to file this

2    order and provide copies to all counsel.

3    DATED this 9th day of April, 2025.

_____
EDWARD F. SHEA
Senior United States District Judge